## U.S. DISTRICT COURT FOR THE DISTRICT OF MARYLAND
### (Northern Division)

| | | |
|---|---|---|
| **SHAWN V. KELLY** | : | |
| **ERIN A. KELLY** | : | |
| 19300 Seven Days Lane | : | |
| Knoxville, MD  21758 | : | |
| | : | |
| *On Their Behalf and on* | : | |
| *Behalf of a Class of* | : | |
| *Persons Similarly* | : | |
| *Situated* | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | Case No. 1:11-cv-1691 |
| **AMERICAN HOME** | : | |
| **MORTGAGE SERVICING INC.** | : | |
| Serve on: | : | |
| The Corporation Trust | : | |
| Incorporated, Resident Agent | : | **DEMAND FOR JURY TRIAL** |
| 300 East Lombard Street | : | |
| Suite 1400 | : | |
| Baltimore, MD 21202 | : | |
| | : | |
| And | : | |
| | : | |
| **DEUTSCHE BANK NATIONAL** | : | |
| **TRUST COMPANY AS** | : | |
| **CUSTODIAN FOR AMERICAN** | : | |
| **HOME MORTGAGE ASSETS** | : | |
| **TRUST 2007-3, MORTGAGE –** | : | |
| **BACKED PASS-THROUGH** | : | |
| **CERTIFICATES SERIES 2007-3** | : | |
| 300 S. Grand Avenue, 41st Floor | : | |
| Los Angeles, CA  90071 | : | |
| | : | |
| *On Its Behalf and on* | : | |
| *Behalf of a Class of* | : | |
| *Persons Similarly* | : | |
| *Situated* | : | |
| | : | |
| Defendants | : | |

## CLASS ACTION COMPLAINT

Plaintiffs Shawn V. Kelly and Erin A. Kelly ("Mr. & Mrs. Kelly" or "Named Plaintiffs"), through her undersigned counsel file this Class Action Complaint and Request for Jury Demand and say in support:

### I. INTRODUCTION

1. The underlying matter involves just one thousands of other similar situations across the State where homeowners are (i) seeking to change and modify their current mortgage loans without requesting additional credit, (ii) complying with all requests of their servicer/lender in making the requests, but (iii) all their reasonable steps are ignored and the homeowners are left with no other option but to seek the assistance of the Courts.

2. These claims concern the utter failure of the Defendants to comply with Federal and Maryland law related to Mr. & Mrs. Kelly's reasonable and appropriate requests to modify their mortgage loan subject to this action.  In addition Defendant American Home Mortgage Servicing Inc. ("AHMSI") and its principals have violated the good faith requirements of its license as a Maryland mortgage lender/servicer as to Mr. & Mrs. Kelly and the Class they seek to represent.

3. Many, but not all, Maryland homeowners facing foreclosure have reasonable and sustainable solutions to their mortgage situation.  Mr. & Mrs. Kelly do have a sustainable solution, yet the Defendants, by and through their authorized agents, are threatening a wrongful foreclosure on Mr. & Mrs. Kelly, as well as the efforts of the Plaintiffs' Class (defined in ¶ 35 below).

4. Further, if the Defendants and their authorized agents proceed to foreclosure sale of Mr. & Mrs. Kelly's, as well as foreclosures concerning the Class members, home and

property without having complied with Federal and Maryland law, Mr. & Mrs. Kelly and the Plaintiffs' Class will sustain significantly greater damages and losses as a result through further loss of equity of her home, emotional damages as a result of these proceedings and the Defendants' illegal actions (directly and indirectly through their authorized agents and affiliates).

## II.  The Parties

5.  Plaintiffs Shawn and Erin Kelly are individual residents of Washington County and reside at 19300 Seven Days Lane, Knoxville, MD  21758 ("the Property').

6.  Defendant American Home Mortgage Servicing Inc. is a Maryland licensed Mortgage lender/servicer (license number 18137).   The resident agent for AHMSI is The Corporation Trust Incorporated located at 300 East Lombard Street, Suite 1400 Baltimore, MD 21202.  AHMSI is a Delaware corporation.

7.  Defendant Deutsche Bank National Trust Company as Custodian for American Home Mortgage Assets Trust 2007-3, Mortgage – Backed Pass-Through Certificates Series 2007-3 ("Deutsche 2007-3") is a mortgage backed security which *claims* to be the proper, legal owner of Mr. & Mrs. Kelly's and the Sub-Class' loans subject to this action. Deutsche 2007-3 has retained and expressly authorized AHMSI to service Mr. & Mrs. Kelly's and the Plaintiffs' Class mortgage loans subject to this action and the claims asserted herein.  Deutsche 2007-3 and the Defendant Class (defined below in ¶ 53 below) rewards AHMSI with commissions and other payments based upon the income AHMSI collects on its behalf from the Plaintiffs' Class.  Upon information and belief Deutsche 2007-3 was formed under the laws of Delaware.

### III.  Jurisdiction

8.  This Court has jurisdiction and venue of the matters asserted herein.  Jurisdiction is appropriate for the following reasons:

    a.  On the basis of diversity of citizenship and in light of the amount in controversy is in excess of $75,000 exclusive of costs. 28 U.S.C. § 1332;

    b.  The matters asserted herein in light of a federal question presented.  28 U.S.C. § 1331; and

    c.  Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. Sections 1332(d), 1453, and 1711-1715 since the amount in   controversy exceeds $5,000,000 and the members of the Plaintiffs class are citizens of a state different from the Defendants and Defendant Class.

9.  Declaratory and injunctive relief are available pursuant to 28 U.S.C. §§ 2201 and 2202, Md. Code Ann., §§ 3-401 – 3-415, and Fed. R. Civ. P. 23.

10. Venue in this District is proper in that the Defendant transacts business within the District and the conduct complained of occurred in the District.

### IV.  Facts

**A.     The Foreclosure Crisis**

11. Over the last four years, Maryland and, indeed, the United States have been in a foreclosure crisis.  Recent news reports have established that one in ten American homes is at risk of foreclosure.

12. The number of Maryland properties with foreclosure filings has increased substantially throughout the last four years.

13. Increased foreclosures have a detrimental effect not just on the borrowers who lose unique property and face homelessness, but also on the homes surrounding a foreclosure and, perhaps, neighborhoods that suffer decreased property values and municipalities that lose tax revenue.

14. The foreclosure crisis is far from over.  Economists predict that interest rate resets on the riskiest of lending products will not reach their zenith until sometime in 2011 or beyond. *See* Eric Tymoigne, Securitization, Deregulation, Economic Stability, and Financial Crisis, Working Paper No. 573.2 at 9, Figure 30 *available at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1458413 (citing a Credit Suisse study showing monthly mortgage rate resets).

15. Since the commencement of the crisis, revelations of bogus, false, and deceptive "robo signing" have come to light involving national lenders and mortgage servicers.   In Maryland the illegal "robo-signing" issue has even come to the forefront because attorneys and substitute trustees, including those acting on behalf of AHMSI have admitted that they filed bogus documents in hundreds of foreclosure cases filed in state courts.

### B.    MARYLAND'S RESPONSE TO THE FORECLOSURE CRISIS

16. In 2007 at the beginning of the crisis, Governor O'Malley convened a task force of representatives to address the crisis that was then underway.   The Maryland Homeownership Preservation Task Force produced a report which aptly summarized the devastating effect of foreclosures on the community as follows:

Foreclosures have a devastating effect on homeowners and the communities in which they live. Frequently, a homeowner who loses his or her home to foreclosure loses the accrued equity. A property sold in a foreclosure sale typically draws a lower price than it would in a regular market sale. In the first

half of 2005, Maryland's "foreclosure discount" was 18.8 percent, according the St. Ambrose Housing Aid Center, Inc. This is a tragedy for a growing number of Maryland families.

Extensive damage is felt in neighborhoods and communities across Maryland. Research shows that with every foreclosure on a single family home, the value of homes within an eighth of a mile declines by about nine-tenths of a percent. Property tax revenues decline proportionally, causing a negative impact on state and local governments. A study of foreclosures in Chicago in 2005 estimated that a single foreclosure costs city government up to $5,000 or more.

Foreclosures also bring with them the potential for more violent crime. Research indicates that for every single percentage point increase in the foreclosure rate in a neighborhood, violent crime in that neighborhood increases by about two percent. Foreclosures can lead to vacant or neglected properties, which create an eyesore and become targets for vandalism. This can tip a community from one dominated by homeowners to one dominated by investors.

Of course, the lending industry and investors also take a hit from rising foreclosure rates. Some major lenders have closed their doors, declared bankruptcy or shuttered their subprime lending arms as a result of the waning demand for risky mortgage products in investor markets. Lenders typically lose $50,000 or more on a single foreclosure, according to information from St. Ambrose Housing Aid Center, Inc. The banking industry cites a figure well over $60,000.

Maryland Homeownership Preservation Task Force Report at 12 (November 29, 2007)

*available at* http://www.gov.state.md.us/documents/HomePreservationReport.pdf

(footnotes omitted).

18. To reasonably address and avoid some of the negative consequences of foreclosure, the Task Force Report made nine general recommendations that are relevant to the issues before the Court.  *See Id.* at 40-43.  Included among these was a specific recommendation, which included the adoption of a good faith and fair dealing standard of care for Maryland licensed mortgage entities like AHMSI.  *Id.* (recommendation 7.3).

19. In response to the expanding foreclosure crisis and the Task Force Report, the General Assembly introduced and passed several bills during the 2008 legislative session to

change Maryland's foreclosure process and curb certain predatory real estate processes.

These bills were passed with nearly complete bi-partisan support. As summarized in the

General Assembly's 90 Day Report for the 2008 session:

Until [2008], Maryland's foreclosure process, from the first foreclosure filing to final sale, had been among the shortest in the nation. Maryland is a quasi-judicial State, meaning that the authority for a foreclosure sale is derived from the mortgage or deed of trust, but a court has oversight over the foreclosure sale process. Most mortgages or deeds of trust include a "power of sale" (a provision authorizing a foreclosure sale of the property after a default) or an "assent to decree" (a provision declaring an assent to the entry of an order for a foreclosure sale after a default). Under the Maryland Rules, it was not necessary to serve process or hold a hearing prior to a foreclosure sale pursuant to a power of sale or an assent to a decree. Consumer advocates contended that the short timeframes and weak notice provisions in State law seriously limited a homeowner's options to avoid foreclosure by, for example, working out a payment plan with the lender or selling the house. In addition, filing a request for an injunction to stop the sale is expensive, time consuming, and not a realistic option for most homeowners.

*Senate Bill 216* **(Ch. 1)**/*House Bill 365* **(Ch. 2)**, emergency legislation that took effect April 4, 2008, make a number of significant changes to the foreclosure process in Maryland for residential real property. "Residential property" is defined under the Acts to mean real property improved by four or fewer single-family dwelling units. Except under specified circumstances, the Acts prohibit the filing of an action to foreclose a mortgage or deed of trust on residential property until the later of 90 days after a default in a condition on which the mortgage or deed of trust states that a sale may be made or 45 days after the notice of intent to foreclose required under the Acts is sent.

. . . .

*Senate Bill 217*/*House Bill 360* define "mortgage fraud" as any action by a person made with the intent to defraud that involves:
• knowingly making, using, or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that it will be relied upon by a mortgage lender, borrower, or any other party to the lending process;
• receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from the aforementioned actions;
• conspiring to violate either of the preceding provisions; or
• filing or causing to be filed in the land records in the county where a residential real property is located any document relating to a mortgage loan that the person knows to contain a deliberate misstatement, misrepresentation, or omission.

7

Under the Acts, the "mortgage lending process" includes the solicitation, application, origination, negotiation, servicing, underwriting, signing, closing, and funding of a mortgage loan, as well as the notarizing of any document in connection with a mortgage loan.

Md. Dept. of Legislative Services, The 90 Day Report, A Review of the 2008 Legislative Session, F16-18 (April 11, 2008) *available at* http://mlis.state.md.us/2008rs/90-Day-report/index.htm.

20.  The Maryland Court of Appeals recently adopted in October 2010 an emergency rule to deal with the robo-signing issue based upon the recommendation of the Standing Committee on Rules of Practice and Procedure.  Writing for the Committee the Honorable Alan M. Wilner explained:

The need for these changes emanates from recent revelations regarding the filing in residential foreclosure actions of affidavits as to which the affiant either did not have sufficient knowledge of the facts stated in the affidavit to validly attest to their accuracy or did not actually read or personally sign the affidavit. Preliminary audits have shown that hundreds of such affidavits have been filed in Maryland circuit courts. Up to this point, courts, with good reason and really of necessity, have relied on the accuracy of affidavits, especially when filed by attorneys, unless there is something on the face of the document to suggest otherwise or the validity of the affidavit is challenged. Evidence that has recently come to light, largely through admissions under oath by the affiants themselves, has shaken the confidence that the courts have traditionally given to those kinds of affidavits.

In the Committee's view, the use of bogus affidavits to support actions to foreclose liens on property, apart from prejudice to the homeowners, constitutes an assault on the integrity of the judicial process itself.

Letter from A. Wilner to the Court of Appeals, Oct. 15, 2010.

21. In further response to the foreclosure crisis, Maryland Commissioner of Financial Regulation required for its licensees, including  AHMSI , "a duty of good faith and fair dealing in communications, transactions, and course of dealings with a borrower in

connection with the…servicing…of any mortgage loan, including, but not limited to…(3) The duty when servicing mortgage loans to: (a) Promptly provide borrowers with an accurate accounting of the debt owed when borrowers request an accounting; (b) Make borrowers in default aware of loss mitigation options and services offered by the licensee; (c) Provide trained personnel and telephone facilities sufficient to promptly answer and respond to borrower inquiries regarding their mortgage loans; and (d) Pursue loss mitigation when possible."   Md. Code Regs. 09.03.06.20.

**C.** **Background on Mr. & Mrs. Kelly's Mortgage Loan Subject to this Action**

22.  Mr. & Mrs. Kelly are the owners of the Property.  They purchased the Property on or about August 2001.

23. Mr. & Mrs. Kelly refinanced their mortgage on the Property on or about February 28, 2007 with a company known as America East Mortgage LLC in what is known as a table funded transaction involving other mortgage companies including George Mason Mortgage, LLC.

24. The load was then allegedly quickly securitized into a mortgage backed-security known as Defendant Deutsche 2007-3.

**D.** **Background on Mr. & Mrs. Kelly's Mortgage Modification Efforts**

25.  Beginning in 2009, Mr. & Mrs. Kelly applied with Defendant AHMSI for a loan modification or change of their mortgage to change the terms without requesting additional credit in hopes of mitigating their situation and avoiding a potential foreclosure of their home and the Property.

26. On December 23, 2009—two days before Christmas—in response to their requests for a modification of their loan payments Mr. & Mrs. Kelly received a Loan Modification Agreement from Defendant AHMSI ("Loan Modification").

27. Defendant AHMSI  represented several details to Mr. & Mrs. Kelly concerning the  Loan Modification including the following:

   a. "We are pleased to advise you that your request for a loan modification is approved."

   b. "American Home Mortgage Servicing, Inc. (AHMSI), your mortgage servicer would like to thank you for working to bring your loan current.  We understand you wish to enter into a Loan Modification Agreement."

   c. It was the proper party authorized to offer the modification and to be a party to the agreement.

   d. Nancy Beltran was the authorized "negotiator" for the Loan Modification on behalf of AHMSI.

   e. The Loan Modification offered by AHMSI the interest rate in Mr. & Mrs. Kelly's loan would be reduced to 4.71% and the total monthly payment would equal $4,355.63 per month.

28. AHMSI never disclosed in the Loan Modification to Mr. & Mrs. Kelly that its offer was contingent upon any other party's approval or that it was not authorized to enter into a modification of Mr. & Mrs. Kelly's loan.

29. Mr. & Mrs. Kelly immediately accepted the Loan Modification and executed all required documents by AHMSI and retuned the executed agreement back to AHMSI.

30. On December 28, 2009 AHMSI's mailroom clerk named "Hardin" received and accepted the Loan Modification from Mr. & Mrs. Kelly.

31. Pursuant to the terms of Loan Modification agreement, Mr. & Mrs. Kelly made the new, modification payments timely in March, April, and May 2010 (the first three months of Loan Modification agreement).

32. At no point in time from the time of the commencement from their efforts through the offer and acceptance of the Loan Modification through June 17, 2010 did AHMSI ever provide Mr. & Mrs. Kelly with any written notice that their request was denied for any reason; however AHMSI did attempt to change the terms of the Loan Modification after it had been accepted and relied upon by Mr. & Mrs. Kelly as demonstrated as follows:

   a. On or about January 16, 2010 Mr. & Mrs. Kelly received a new, second modification offer from AHMSI with different terms and conditions of the Loan Modification.

   b. This new, second modification offer from AHMSI was subsequently denied because Mr. & Mrs. Kelly rejected the offer and never agreed to its terms.

   c. Mr. & Mrs. Kelly spoke to AHMSI's authorized negotiator Nancy Beltran by telephone on or about January 28, 2010 who misrepresented to them that the January 16, 2010 modification offer had the same terms as the Loan Modification when in fact the terms were not the same.

   d. On June 18, 2010, for the first time AHMSI provided a written, untimely reason that the Loan Modification offered by AHMSI and accepted by Mr. & Mrs. Kelly in December 2009 "was invalid[] due to the fact that it had not been approved by the investor" Defendant Deutsche 2007-3.   Upon information and belief this

11

denial is bogus and untruthful since the Loan Modification was never conditioned upon investor approval and AHMSI presented itself to Mr. & Mrs. Kelly as the authorized party to enter into the Loan Modification.

33. Before ever providing a truthful, written denial of the Kelly's modification requests and the Loan Modification, on or about May 2, 2011,  AHMSI's and Deutsche 2007-3 notified Mr. & Mrs. Kelly of their intent to foreclose upon Kelly's home and property.

34. Mr. & Mrs. Kelly have been damaged by AHMSI's and Deutsche 2007-3's direct and indirect actions, including those by its authorized substitute trustees and attorneys, employees, agents, and sub-agents, described herein through the improper threat of an imminent foreclosure action against the Property and Mr. & Mrs. Kelly which has damaged their credit, cost them legal fees and expenses attempting to resolve this dispute without the need for litigation, and caused emotional damages due to stress and other physical manifestations.  The Plaintiffs' Class has suffered similar damages.

**Plaintiffs' Class Definition**

35. This class action is brought by Mr. & Mrs. Kelly on behalf of themselves and a Plaintiffs' Class of all Maryland homeowners whose mortgage loans (i) have been serviced by AHMSI and (ii) since three years proceeding this action have sought to change the terms of their existing mortgage without requesting additional credit; and (iii) have not received any notice of denial of their request for modification or change in terms and (iv) have been subject to a foreclosure action or threat of foreclosure by AHMSI directly or indirectly through its authorized attorneys and agents (hereinafter "Plaintiffs' Class").

**Facts Common to the Plaintiffs' Class**

36. Named Plaintiffs sue on their own behalf and on behalf of a Plaintiffs' Class of persons under Fed. Rule. Civ. Pro. 23.

37. Plaintiffs do not know the exact size or identities of the proposed Plaintiffs' Class, since most of the information is in the exclusive control of Defendants.  Certain information may be reported by the Defendants to the State of Maryland and may also be part of the public records.  Plaintiffs believe that the Plaintiffs' Class encompasses many hundreds of individuals and whose identities can be readily ascertained from AHMSI's books and records as well as public records.  Therefore, the proposed Plaintiffs' Class is so numerous that joinder of all members is impracticable.

38. Plaintiffs believe the amount in controversy is more than $5 million.

39. All members of the Plaintiffs' Class have been subject to and affected by the same conduct. The claims are based on standard form contracts and uniform loan modification processing requirements required by AHMSI.  There are also questions of law and fact that are common to the class, and predominate over any questions affecting only individual members of the class.  These questions include, but are not limited to the following:

    a.       the nature, scope and operation of  AHMSI's obligations to homeowners under its mortgage modification programs;

    b.       whether AHMSI's referral to or continued prosecution of a  foreclosure or foreclosure sale/action while simultaneously considering a borrower for a modification amounts to a breach of contract and/or a breach of its duty of good faith and fair dealing to the Plaintiffs' Class and constitutes an unfair and

deceptive practice or misrepresentation or omission under Maryland law;

c.       whether AHMSI's failure to provide a written denial to the Plaintiffs' Class requests for a change in the terms of their existing credit without request additional credit is  violation of AHMSI's duty of good faith and fair dealing to the Plaintiffs' Class;

d.       whether AHMSI's conduct violates the Equal Credit Opportunity Act ("ECOA"),  15 U.S.C. § 1691 e*t seq.* and state law;

e.       whether AHMSI's conduct violates the Maryland Consumer Protection Act ("MCPA"), Md Code Ann., Com. Law, § 13-101, *et seq.;*

f.       whether AHMSI's conduct violated the Maryland Consumer Debt Collection Act ("MDCDCA"), Md Code Ann., Com. Law, § 14-201, et seq.*;*

g.       whether AHMSI's conduct violated the Maryland Mortgage Fraud Prevention Act ("MMFPA"), Md Code Ann., Real Prop., § 7-401, *et seq.;*

h.       whether there are more than 50 borrowers who are members of the Plaintiffs' Class;

i.       whether AHMSI should be enjoined from continuing to pursue foreclosure actions, directly or indirectly, in Maryland concerning borrowers who have requested a mortgage modification of their existing credit arrangement without seeking additional credit but whom they have not received a written denial from AHMSI;

j.       whether the Defendants should be ordered to seek orders vacating all transfers of interests in the Plaintiff's and Class Members in the three years before the commencement of this action;

k.         the attorney fees, litigation costs, and court costs allowed and claimed in this civil action;

l.         the declaratory relief sought in this civil action; and

m.        The injunctive relief sought in this civil action.

40. The claims of the Named Plaintiffs are typical of the claims of the class and do not conflict with the interests of any other members of the Plaintiffs' Class that both the Named Plaintiffs and the other members of the Plaintiffs' Class were subject to the same conduct, same modification procedures by AHMSI, and were met with the same absence of any written response to a change in mortgage terms without an extension of credit and/or subject to foreclosure before a modification had been denied or even completed in writing.

41. Named Plaintiffs are similarly situated with and has suffered similar damages as the other members of the Plaintiffs' Class as described in ¶ 35 above.

42. The Named Plaintiffs will fairly and adequately represent the interests of the Plaintiffs' Class. They are committed to the vigorous prosecution of the class claims and have retained attorneys who are qualified to pursue this litigation and have experience in class actions – in particular, consumer protection actions.

43. A class action is superior to other methods for the fast and efficient adjudication of this controversy.  A class action regarding the issues in this case does not create any problems of manageability.

44. This putative class action meets all of the requirements of Fed. Rule. Civ. Pro. 23.

45. AHMSI has acted or refused to act on grounds that apply generally to the Plaintiffs' Class so that final injunctive relief or corresponding declaratory relief is appropriate respecting

the class as a whole.

46. It would not be economically feasible for each of the individual Plaintiffs' Class member to maintain similar claims since many of them have already suffered financial setbacks.

47. The damages of each individual Plaintiffs' Class member can be calculated using the same common formulas.

48. Failure to join the claims of each individual claimant into class claims would lead to duplicate claims/litigation involving the same issues and facts, excessive costs and fees, burdens and potentially inconsistent outcomes.

49. The common issues set forth above are predominate and asserting the claims on a class basis is superior to the alternative.

50. The Named Plaintiffs and Plaintiffs' Class had no reason to know of the true illegal nature of the illegal acts of the Defendants and Defendant Class concerning the responses to their mortgage loan modification requests since the Defendants and Defendants Class routinely omit or misrepresent certain required information from the Plaintiffs' Class concerning the status of the hundreds of modification requests made to them during the class period.

51. This case is one of those rare instances where circumstances external to the conduct of the Named Plaintiffs and Plaintiffs' Class which warrant a finding that it would be unconscionable to enforce the various federal and state limitations periods against the Plaintiffs' Class since such an act would create a gross injustice of allowing the Defendants and Defendant Class to wrongfully and unjustly enriched to the detriment of the Plaintiffs' Class in total sum of millions of dollars.

52. This matter is an extraordinary circumstance at the core of the current economic troubles related to the slumping housing environment that is beyond the control of the Plaintiffs' Class and Named Plaintiffs who trusted that licensed mortgage professionals, including the Defendants and Defendant Class, would comply with the law.  Because the Defendants and Defendant Class misrepresented that their acts would authorized by the government, the Plaintiffs' Class and Named Plaintiffs had no reason to investigate further on their own.

## THE DEFENDANT CLASS

53. This action is also properly brought as a Defendant Class under Fed.R.Civ.P. 23. Plaintiffs propose, as the definition of the Defendant Class, that the Defendant Class be defined as follows:

> Those persons or entities, or their trustees, who engage AHMSI as the servicing agent or sub-agent for residential mortgage loans related to Maryland consumers who are members of the Plaintiffs' Class.

54. The particular members of the Defendant Class are capable of being described without difficult managerial or administrative problems.  The members of the Defendant Class are readily identifiable from the information and records in the possession or control AHMSI or its affiliated entities and agents.

55. The Defendant Class members are sufficiently numerous that individual joinder of all members is impractical.  This allegation is based on the fact that AHMSI has reported to the State of Maryland that it services residential mortgage loans to no less than 100 different entities.

56. There are questions of law and fact common to the Defendant Class which questions predominate over any questions affecting only individual members of the Defendant Class and, in fact, the wrongs alleged against AHMSI and the Defendant Class members and the remedies sought by Named Plaintiffs and the Plaintiffs' Class members against AHMSI are identical, the only difference being the exact monetary amount to which each Defendant and Defendant Class Member is liable to the respective members of the Plaintiffs' Class.  The principal common issues include, but are certainly not limited to:

   a.  The Defendant Class members' conduct related to AHMSI's servicing of the mortgage loans subject to the Plaintiffs' Class;

   b.  Whether the Defendant Class members are liable for AHMSI's wrongful acts under Maryland and federal law;

   c.   Whether the Defendant Class members are liable for the AHMSI's wrongful acts under principles of assignee, conspiracy and/or partnership liability;

   d.  Whether AHMSI was the authorized agent for the Defendant Class;

   e.  Whether the Defendant Class is liable for the statutory violations performed by AHMSI on their behalf in the general course of business authorized by the Defendants Class;

   f.  Whether the Defendant Class is liable for the violations of AHMSI based upon the theory of respondeat superior;

   g.  Whether the Defendant Class is entitled to assert any defenses to AHMSI's violations of ECOA, MCPA, and other state laws;

h. Whether the Defendant Class members are liable to the Named Plaintiffs and the Plaintiffs' Class members as a result of their involvement in the aforementioned illegal acts of AHMSI.

57. AHMSI's defenses and those of the Defendant Class Members (which defenses are denied) are typical of those of Deutsche 2007-3 and will be based on the same legal and factual theories. Upon information and belief the Defendant Deutsche 2007-3 and other members of the Defendant class have entered into pooling and servicing agreements with AHMSI that are substantively similar if not identical. This belief is based upon various pooling and servicing agreements published on the SEC website.

58. Deutsche 2007-3, in representing its own interests, will also fairly and adequately represent and protect the interests of the Defendant Class. Deutsche 2007-3 will retain counsel experienced in defending class actions and actions involving unlawful commercial practices. Said defendants do not, based upon information and belief, have any interests which might cause them not to vigorously defend this action.

59. Certification of a defendant class under Fed.R.Civ.P. 23 (b)(3) is appropriate as to the Defendant Class Members in that common questions predominate over any individual questions and a defendant class action is superior for the fair and efficient adjudication of this controversy. A defendant class action will cause an orderly and expeditious administration of Defendant Class members' defenses, if any, and economies of time, effort and expenses will be fostered and uniformity of decisions will be insured.

## COUNT I -- VIOLATION OF THE EQUAL CREDIT OPPORTUNITY ACT (15 U.S.C. §1691(d))

(Individual and Plaintiffs' Class Claim Against all Defendants and the Defendant Class)

60.  Mr. & Mrs. Kelly reiterate and incorporate every allegation above as if set forth herein in full and add:

61. Mr. & Mrs. Kelly are "applicants" as governed by ECOA, 15 U.S.C §1691a(b).

62. AHMSI and Deutsche 2007-3 were "creditors" as governed and defined by ECOA, 15 U.S.C. §1691(a)(e) at all times relevant hereto.

63. Deutsche 2007-3 and the Defendant Class are also liable for the acts of its agent, AHMSI, whose actions described herein, on behalf of Deutsche 2007-3 and the Defendant Class, were completely within the delegated authority to AHMSI by Deutsche 2007-3 and the Defendant Class.

64. 15 U.S.C §1691(d)(1) provides that "within thirty days…after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application."

65. The accompanying Regulation B, issued by the Board of Governors of the Federal Reserve System pursuant to ECOA, further provides: "A creditor shall notify an applicant of action taken within: (i) 30 days after receiving a completed application concerning the creditor's approval of, counteroffer to, or adverse action on the application." 12 C.F.R §202.9(a)(1)(i).

66. Additionally, 15 U.S.C. §1691(d)(2) requires "that each applicant against whom "adverse action" is taken shall be entitled to a statement of reason for such action from the creditor." 15 U.S.C. §1691(d)(2).

67. 15 U.S.C. §1691(d)(6) defines "adverse action" as a denial or revocation of "credit", a change in terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or substantially the terms requested." 15 U.S.C. §1691(d)(6)

68. The term "credit" means the right granted by a debtor to defer payment of a debt or to incur debts and defer its payment…and defer payment thereof. 15 U.S.C. § 1691a(d); 12 C.F.R. §202.2(j).

69. The applications for a loan modification by the Named Plaintiffs and Plaintiffs' Class Members were applications for "credit" as defined by 15 U.S.C. § 1691a(d) and 12 C.F.R. §202.2(j).

70. Named Plaintiffs and Plaintiffs' Class Members provided AHMSI with completed applications for credit.

71. AHMSI, Deutsche 2007-3, and the Defendant Class failed to evaluate the Named Plaintiffs and the Plaintiffs' Class Members' loan modification requests in good faith and a make any determination on the applications application after receiving the completed loan modification applications.   AHMSI also failed to comply with its duty under Maryland as required by Md. Code Regs. 09.03.06.20.

72. Instead, AMHSI, Deutsche 2007-3, and the Defendant Class grossly ignored their responsibility to respond to Mr. & Mrs. Kelly and the Plaintiffs' Class' loss mitigation requests as proscribed in Md. Code Regs. 09.03.06.20 and proceeded to threaten and engage in illegal foreclosure actions.

73. In failing to evaluate the Plaintiffs' Class applications for credit in a manner required by the Md. Code Regs. 09.03.06.20, AHMSI, Deutsche 2007-3, and the Defendant Class

effectively denied the Plaintiffs' Class credit, and thereby took "adverse action" – as defined by ECOA – on the Plaintiffs' Class' applications.

74. The Plaintiffs' Class never received written notice from AHMSI, Deutsche 2007-3, the Defendant Class, or anyone else of the adverse action taken on their applications for loan modifications.

75. Additionally, AHMSI and Deutsche 2007-3's belated notification described in ¶ 32  was not in compliance with the notification requirements set forth in ECOA, 15 U.S.C. §1691(d)(2), as the notification failed to provide Plaintiff with a specific, truthful statement of reasons for the adverse action taken.

76. The above failure of AHMSI and Deutsche 2007-3 to notify the Plaintiffs' Class of the adverse actions taken on their application within thirty days from receipt of their completed application for credit as mandated by 15 U.S.C §1691(d)(1), §1691(d)(2) and 12 C.F.R §202.9(a)(1)(i) was a substantive violation of ECOA.

77. As a result of the above ECOA violations, the Plaintiffs' Class has suffered substantial actual damages in the following:

    a.  the loss of the Plaintiffs' Class' rights to explain or quickly rectify and address any errors or problems in their applications for credit;

    b.  the loss of the credit itself; and

    c.  frustration, anger, humiliation, fear, embarrassment and other emotional and mental anguish.

78. As a result of the above alleged ECOA violations, AHMSI, Deutsche 2007-3, and the Defendant Class are liable to Plaintiffs' Class and Named Plaintiffs for actual damages pursuant to 15 U.S.C. §1691(e)(a), for punitive damages against AHMSI, Deutsche 2007-

3, and Defendant Class pursuant to 15 U.S.C. §1691e(b) and for attorneys fees and costs

pursuant to 15 U.S.C. §1691(e)(d) and 12 C.F.R. §202.16(b).

WHEREFORE, Named Plaintiffs pray this Court to award the following relief against

AHMSI, Deutsche 2007-3, and the Defendant Class for its violation of ECOA:

A.  The Court certify the Class and appoint the Named Plaintiffs as class
    representatives and their counsel as Class Counsel;

B.  Actual damages as described in ¶ 34 above in a sum of no less than $20,000
    per Plaintiffs' Class Member pursuant to 15 U.S.C. §1691 (e)(a).

C.  Punitive Damages in the amount of $500,000 against AHMSI, Deutsche 2007-
    3, and each of the members of the Defendants Class, individually, pursuant to
    15 U.S.C. §1691e(b).

D.  Attorneys fees and costs pursuant to 15 U.S.C. § 1691e (d).

E.  The Plaintiffs' Class and Named Plaintiffs are also entitled to equitable relief
    pursuant to 15 U.S.C. § 1691e (c) and Fed.R.Civ.P. 23 against AHMSI,
    Deutsche 2007-3, and Defendant Class members and asks this Court to: (i)
    enter an Order declaring that AHMSI, Deutsche 2007-3, and Defendant Class
    members' conduct is a violation of ECOA, insofar as it failed to provide
    notice to Named Plaintiffs and Plaintiffs' Class of its actions on their
    applications for a modification or change in credit within thirty day from
    receipt of the Plaintiff Class' applications for credit to modify their mortgage
    loans; and (ii) require delivery of ECOA Complaint notices in all future
    instances.

**COUNT II -- VIOLATION OF THE MARYLAND**
**MARYLAND EQUAL CREDIT OPPORTUNITY ACT,**
**MD CODE, COMM. LAW § 12-701 *ET SEQ.***
(Individual and Plaintiffs' Class Claim Against all Defendants and the Defendant Class)

75.     Mr. & Mrs. Kelly reallege and incorporate by reference the foregoing allegations.

76.     Mr. & Mrs. Kelly are "applicants" as defined in Md. Code, Comm. Law § 12-701(b).

77.     AHMSI, Deutsche 2007-3, and the Defendant Class Members are "creditors" as defined as Md. Code, Comm. Law § 12-701(e).

78.     The express finding and purpose of the General Assembly in enacting the Maryland Equal Credit Protection Act was to "insure that the various financial institutions and other persons and firms engaged in the extension of credit exercise their responsibility to make credit available with fairness [and] impartiality." Md. Code, Comm. Law § 12-702(a).

79.     "Any violation of the federal Equal Credit Opportunity Act, or any regulation adopted under the federal Equal Credit Opportunity Act, is a violation of the Maryland Equal Credit Protection Act. Md. Code, Comm. Law § 12-704(3).

80.     AHMSI, Deutsche 2007-3, and the Defendant Class Members have violated ECOA as alleged in ¶¶ 60-78 above.

81.     The Named Plaintiffs and Plaintiffs' Class are entitled to actual damages, punitive damages, attorney fees and costs as well as injunctive and declaratory relief. Md. Code, Comm. Law § 12-707.

WHEREFORE, Named Plaintiffs pray this Court to award the following relief against AHMSI, Deutsche 2007-3, and the Defendant Class for its violation of Maryland Equal Credit Protection Act:

A. The Court certify the Class and appoint the Named Plaintiffs as class representatives and their counsel as Class Counsel;

B. Actual damages as described in ¶ 34 above in a sum of no less than $20,000 per Plaintiffs' Class Member pursuant to Md. Code, Comm. Law § 12-707(a);

C. Punitive Damages in a sum of no less than $100,000 against AHMSI, Deutsche 2007-3, and each Defendant Class member pursuant to Md. Code, Comm. Law § 12-707(c);

D. Certain preventive relief, including an application for a permanent or temporary injunction, restraining order, or other declaratory relief pursuant to Md. Code, Comm. Law § 12-707(d)  to require the Defendants and Defendants Class to comply with the Maryland Equal Credit Protection Act;

E. An award of reasonable attorneys fees and costs pursuant to Md. Code, Comm. Law § 12-707(e); and

F. Such other and further relief as the nature of their cause may require.

<u>**COUNT III -- VIOLATION OF THE MARYLAND**</u>
<u>**CONSUMER DEBT COLLECTION ACT**</u>
<u>**MD CODE, COMM. LAW, § 14-201 *et seq.***</u>
(Individual and Plaintiffs' Class Claim Against all Defendants and the Defendant Class)

82. Mr. & Mrs. Kelly reallege and incorporate by reference the foregoing allegations.

83. By threatening an intent to foreclose, AHMSI, Deutsche 2007-3, and the Defendants Class have acted as collectors directly and indirectly as that term is defined by § 14-201(b) of MD. CODE, COMM. LAW.

84. Mr. & Mrs. Kelly and the Plaintiffs' Class are persons as defined by § 14-201(d) of MD. CODE, COMM. LAW.

85.    The underlying mortgage transaction and threat of foreclosure related to this complaint constitutes a "consumer transaction" as defined by § 14-201(c) of MD. CODE, COMM. LAW.

86.    AHMSI, Deutsche 2007-3, and the Defendant Class have claimed, attempted, or threatened to enforce a right with knowledge that their right did not exist under Maryland or Federal law until they complied with ECOA, the Maryland Equal Credit Protection Act, and Md. Code Regs. 09.03.06.20.

87.    Mr. & Mrs. Kelly and the Plaintiffs' Class' damages as alleged herein were proximately caused by AHMSI and Deutsche 2007-3's actions including damages for emotional distress or mental anguish suffered with or without accompanying physical injury as well as those damages described in ¶ 34 above.

WHEREFORE, Mr. & Mrs. Kelly pray for the following relief against AHMSI, Deutsche 2007-3, and the Defendant Class for their violations of the Maryland Consumer Debt Collection Act:

A.  The Court certify the Class and appoint the Named Plaintiffs as class representatives and their counsel as Class Counsel;

B.  A money judgment of all damages caused by the AHMSI, Deutsche 2007-3, and the Defendant Class' actions, directly or indirectly, of $25,000 per Plaintiffs' Class member;

C.  Their costs including attorneys' fees as well as pre- and post-judgment interest;

D.  Such other and further relief as the nature of their cause may require.

## COUNT IV – VIOLATION OF MARYLAND'S CONSUMER PROTECTION ACT, Md.

## Code Ann. Com. Law § 13-101 *et. seq.*

(Individual and Plaintiffs' Class Claim Against all Defendants and the Defendant Class)

88.  Mr. & Mrs. Kelly reallege and incorporate by reference the foregoing allegations.

89. The mortgage loan transactions and foreclosure practices as set forth herein of the Defendants and Defendant Class members against the Named Plaintiffs and Plaintiffs' Class members are governed by the Consumer Protection Act, Md. Code Ann. Com. Law § 13-101 *et. seq.*

90. Section 13-303 prohibits unfair or deceptive trade practices in the extension of consumer credit or collection of consumer debts.  The prosecution of a foreclosure action involves both the extension of credit and the collection of debts.

91. The Maryland Consumer Protection Act defines unfair or deceptive trade practices to include, inter alia, the following: (a) False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; and (b) Failure to state a material fact if the failure deceives or tends to deceive.

92. By engaging in the acts and omissions set forth above, by making the misrepresentations set forth above, and by failing to disclose material facts where the failure to do so deceived or tended to deceive, the Defendants and Defendant Class Members have committed unlawful or deceptive trade practices in violation of the Maryland Consumer Protection Act.  Sec. 13-301(1) and (3) and Sec. 13-303(4) ("MCPA").

93. The Defendants' as well as the Defendant Class members' conduct, as set forth above, had the capacity, tendency or effect of deceiving Mr. & Mrs. Kelly and other Plaintiffs' Class members, who in fact were deceived or misled, causing injury and loss through:

    a.  the unfair or deceptive prosecution, based upon incomplete and bogus responses to the Plaintiffs' Class member's requests for modifications of their loans, or threat of prosecution of a foreclosure action by Defendants and Defendant Class members through their authorized agents; and

    b.  Deutsche 2007-3 and the Defendant Class members' willful indifference to the illegal acts of AHMSI in servicing the Plaintiffs' Class member's loans on their behalf, as described herein, has "infected" and "exasperated" the use of illegal or non-responses of AHMSI to Mr. & Mrs. Kelly as well as to the Plaintiffs' Class that were otherwise required as a matter of state and federal law. *Hoffman v. Stamper*, 385 Md. 1, 32, 867 A.2d 276, 294 (2005).

94. Mr. & Mrs. Kelly and the Plaintiffs' Class' damages as alleged herein were proximately caused by AHMSI and Deutsche 2007-3's actions including damages for emotional distress or mental anguish suffered with or without accompanying physical injury as well as those damages described in ¶ 34above.

WHEREFORE, Mr. & Mrs. Kelly pray for the following relief against AHMSI, Deutsche 2007-3, and the Defendant Class for their violations of the Maryland Consumer Protection Act:

A. They be awarded as part of this claim a sum of no less than $20,000 per Plaintiffs' Class Member which represents their compensatory damages as a result of the

Defendants' and Defendant Class' direct and indirect, unfair or deceptive practices as described herein including the Defendants and Defendant Class members failure to comply with ECOA, the Maryland Equal Credit Protection Act, and Md. Code Regs. 09.03.06.20;

B. The Court certify the Class and appoint the Named Plaintiffs as class representatives and their counsel as Class Counsel;

C. They be awarded their reasonable attorney's fees and costs; and

D. That their claim should include such other and further relief as the Court deems just and proper.

## COUNT V – MARYLAND MORTGAGE FRAUD PROTECTION ACT, MD. ANN. CODE, REAL PROP. § 7-401 MD. REAL PROP., *et seq.*

(Individual and Plaintiffs' Class Claim Against all Defendants and the Defendant Class)

95.  Mr. & Mrs. Kelly reallege and incorporate by reference the foregoing allegations.

96.  The Maryland Mortgage Fraud Protection Act, Md. Ann. Code, Real Prop. § 7-401 MD. REAL PROP., *et seq.* ("MMFPA") governs the relationship between the Defendants and Defendants Class with the Named Plaintiffs and Plaintiffs' Class.

97.  MD ANN. CODE., REAL PROP. § 7-401 (c) provides: "Homeowner" means a record owner of residential real property. The Plaintiffs and Plaintiffs' Class Members are record owners of the residential properties in question and therefore are Homeowners.

98.  MD ANN. CODE., REAL PROP. § 7-401 (e) provides "Mortgage lending process…includes [t]he…servicing…of a mortgage loan."

99.  MD ANN. CODE., FINANCIAL INSTITUTIONS CODE. § 11-501 (k)(1) provides: "Mortgage loan" means any loan or other extension of credit that is: (i) Secured, in whole or in

part, by any interest in residential real property in Maryland; and (ii) If for personal, household or family purposes, in any amount."

100.    The MMFPA works to protect the interests of all parties to mortgage issues in Maryland from misstatements, misrepresentations and omissions; in this instance the MMFPA works to protect borrowers like Mr. & Mrs. Kelly from mortgage companies like the Defendants and Defendants Class and ensure a level, fair playing field between all borrowers and professionals.

101.    The Named Plaintiffs and Plaintiffs' Class members were or are homeowners in the Mortgage Lending Process as defined by the MMFPA since the actions in dispute in this lawsuit involve the servicing of their residential mortgage loans as it relates to a foreclosure action or threat of foreclosure which is an attempt to collect a certain sum on the mortgage transaction.

102.    MD ANN. CODE., REAL PROP. § 7-401 (d) provides:

"Mortgage fraud" means any action by a person made with the intent to defraud that involves:

1.    Knowingly making any deliberate misstatement, misrepresentation or omission during the mortgage lending process with the intent that the misstatement, misrepresentation or omission be relied on by a mortgage lender, borrower or any other party to the mortgage lending process;

2.    Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.

3.    Receiving any proceeds or any other funds in connection with a mortgage closing that the person knows resulted from a violation of item (1) or (2) of this section;

4.    Conspiring to violate any provisions of item of (1), (2) or (3) of this section…

103.     The Defendants and Defendant Class have committed Mortgage Fraud by:

a.      Knowingly making, as described herein, deliberate misstatements, misrepresentations and omissions during the mortgage lending process, including failing to respond to the Named Plaintiffs and Plaintiffs' Class' requests for a modification or change of their mortgage loans, with the intent that the misstatements, misrepresentations and omission be relied on by the Named Plaintiffs and Plaintiffs' Class members (and the general public);

b.      Knowingly using or facilitating, as described herein, the use of any deliberate misstatements, misrepresentations, and omissions during the mortgage lending process, including the state court foreclosure actions it has commenced and carried out, with the intent that the misstatements, misrepresentations, and omissions be relied on by the Named Plaintiffs and Plaintiffs' Class members.

104.      Plaintiff and the Plaintiffs' Class Members have been damaged by the Defendant's deliberate misstatements, misrepresentations, and omissions during the mortgage lending process as stated herein including ¶¶ 34 above.

105.     MD ANN. CODE., REAL PROP. CODE. § 7-401 (g) provides:

Pattern of mortgage fraud means two or more incidents of mortgage fraud that:

- Involve two or more residential real properties; and

- Have similar intents, results, accomplices, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics.

106.     Upon information and belief the Defendant has engaged in a Pattern of Mortgage Fraud by committing similar acts against two or more Maryland residential properties with similar intents, results and methods of commission as that which was committed by

Defendants and Defendants Class against the Plaintiffs' Class as described herein.

WHEREFORE, Mr. & Mrs. Kelly request the following on their behalf and the Plaintiffs' Class:

A.  They be awarded as part of their claims the sum of no less than $20,000 per class member which represents  their compensatory damages as a result of the Defendant's illegal practices and misrepresentations;

B.  The Court certify the Class and appoint the Plaintiffs as class representatives and their counsel as Class Counsel;

C.  The Class be awarded as part of all their claims the sum of no less than $60,000 per class member for the Defendants and Defendant Class member's willful and knowing violations;

D.  They be awarded as part of the claim their reasonable attorney's fees and costs; and

E.  That their claim should include such other and further relief as the Court deems just and proper.

Respectfully Submitted,

/s/ Scott C. Borison
Scott C. Borison, Esq. (Bar No. 22576)
borison@legglaw.com
Phillip R. Robinson, Esq., Of Counsel
(Bar No. 93431)
probinson@legglaw.com
Janet Legg, Esq. (Bar No. 15552)
legg@legglaw.com
Legg Law Firm, LLC.
5500 Buckeystown Pike
Frederick, Maryland 21703
(301) 620-1016
Fax: (301) 620-1018